IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JEWEL SANITARY NAPKINS, LLC,

                            Plaintiff,                                          ORDER

    v.                                                                        23-cv-126-slc

BUSY BEAVER PUBLICATIONS, LLC,

                            Defendant.

Plaintiff Jewel Sanitary Napkins, LLC manufactures sanitary napkins containing a layer of material called graphene that Jewel claims has health benefits. Jewel saw its sales drop significantly in the Amish community when, in August 2022, defendant Busy Beaver, a classified advertising publication distributed to Amish and Mennonite communities, published a reader-submitted letter (the Concerned Sister ad) that Jewel says made false accusations about its products. Jewel is suing Busy Beaver for common law libel and trade libel and its lawsuit is in federal court on the basis of diversity jurisdiction under 28 U.S.C. § 1332. The parties have consented to the jurisdiction of a United States Magistrate Judge. Dkt. 20.

Before me is Jewel's motion for sanctions, dkt. 73, and Busy Beaver's motion for summary judgment on all of Jewel's claims, dkt. 32.[1] For the following reasons, I will deny the motion for sanctions, grant the motion for summary judgment, and close this case.

I find the following facts to be undisputed and material unless otherwise noted:

---

[1]Busy Beaver has also filed an unopposed motion to withdraw its admission to plaintiff's Request for Admission no. 14. Dkt. 80. In response to this admission, Busy Beaver stated that it had destroyed the original classified ad form for the reader-submitted letter. Dkt. 38-5 at 5. The original form has since been found, *see* dkt. 65-1, so I will grant this motion.

FACTS

1.     **The Parties**

Plaintiff Jewel Sanitary Napkins, LLC is a Georgia limited liability company that sells what it describes as "all-natural sanitary napkin and pads" under the "Reign" brand. The company was founded in 2019 by husband and wife team Demond and Qiana Crump, with a mission to "educate in terms of the danger of using toxic products, [and] the dangers of tampon usage." Dkt. 60 at ¶ 70.

Jewel quickly found a market for its sanitary napkins within the Amish community. It began selling its products to Amish distributors, who resold the products within their respective Amish communities. Since 2019, Jewel has had almost 4,000 distributors of its products, including various distributors that sell predominantly to the Amish community.

Defendant Busy Beaver Publications, LLC is a Wisconsin limited liability company. It publishes The Busy Beaver, a classified advertisement publication distributed primarily by mail to members of the Plain communities (Amish and Mennonites). As of September 2022, the Busy Beaver published several regional editions, covering numerous states in the United States and parts of Canada. Since 2019, distributors for Jewel have placed more than 1,000 advertisements in the various Busy Beaver publications.

2.     **Jewel's Promotional Activities**

On its website and in numerous social media postings, Jewel highlights what it contends are the benefits of its sanitary napkins. Jewel's website https://reignpads.com/ contains a page stating the benefits of the Reign pad, including that it contains a layer of the "Nobel Prize

Winning material 'Graphene.'" The company promotes its sanitary napkins as being "free from toxins," "revolutionary" and "life-changing." Dkt. 60 at ¶¶ 110-111.

In its product promotions, Jewel touted graphene as a "non-harmful and non-toxic" material with numerous health benefits, including relieving abdominal crafts and fatigue, helping to eliminate bacteria and aroma, and boosting metabolism and immunity. *Id.* at ¶¶ 117-118. Jewel also said that graphene moves heat away from your core and "contains vibrational energy." *Id.* at ¶ 118. Jewel's chemist hired to assess rumors circulating about Jewel's products describes graphene as a "quasimetal" that "shares some properties with semi-conductor materials like Silicon" and "is highly conductive for both electricity and heat." Dkt. 51 at ¶ 174.

Jewel maintains a YouTube account under @reignsanitarynapkins.[2] Videos promoting Jewel's products are also posted to YouTube by Jewel's distributors. One of Jewel's videos on YouTube is a promotional video of Demond Crump demonstrating a Reign pad, where Crump uses the pad's graphene strip to light a lightbulb. Another promotional video produced by Jewel and posted on its YouTube account shows a Reign pad lighting a lightbulb.

3.    **The Concerned Sister Ad**

In mid-August 2022, the Busy Beaver Pennsylvania office received a completed classified ad submission form and payment from an individual named Betty Lantz. Lantz included her name and address on the form, but she checked "no" to the question asking whether she wanted her name or address included in the ad. Busy Beaver CFO Willis Hershberger testified that the

---

[2]The Reign YouTube account had 519 subscribers as of April 24, 2025.

publication has printed ads without identifying information, so long as the person who submitted the ad is identified on the submission form.

A typist at Busy Beaver typed Lantz's submission and inserted it into an Excel file with other classified ads to be placed in the August 26, 2022 edition of the Busy Beaver PA+.  The ad stated:

> Attention! Are the Reign products as safe as they say? Graphene is a conductive metal meaning it attracts electrical waves/radiation from the air, Do we want this close to our bodies, Will we see serious consequences for using this product? Don't just go by what the company says, A concerned sister.

Months before the Concerned Sister ad was published in the Busy Beaver, rumors had begun circulating in the Plains communities about Jewel's products, including that the sanitary napkins caused cancer, were covertly delivering Covid-19 vaccines to women, and contained radiation and metal.

Ivan Lapp is the main salesperson for the Busy Beaver of PA+.  Lapp also runs an equipment sales business and allowed a website designer to set up a website for the business and related social media accounts, but he is Amish and does not control any social media account. He has limited internet access at work that does not include a way to search Google–he only has access to email, QuickBooks and specific websites, such as the Busy Beaver website.

Lapp proofread the ad as typed in the Excel file.  On average, Lapp proofreads approximately 1,400 ads each week.  Many of these ads make claims about health products, and about four to six ads each week are advertisements for Reign products.  The Busy Beaver does not independently verify the claims made in the ads it publishes, and does not publish images of women in bathing suits, promotions for rock concerts, or political ads.

4

The Concerned Sister Ad was published in the August 26, 2022 edition of the Busy Beaver of PA+. The same edition also ran the following ads, which were proofread by Lapp:

> Reign Sanitary Napkins, free shipping on 10 or more packs. $6.00 each. Toxin, chemical free. Also Reign vitamin sprays. Absorbs directly into bloodstream, $15.00 for a month's supply. Please pay when you order. Maryann Stoltzfus, 3099 Irishtown Rd., Gordonville, PA, 17529. 765-344-5188.

> Make your home a safe place with a safe environment! Did you realize the ingredients in your own personal care products could be harming you and your children's health? Go toxin free! For more information call 717-844-3938.

Around September 12, 2022, one of Busy Beaver's Michiana sales representatives, Lee Eicher, received a call from a Jewel distributor, who told Eicher that the Busy Beaver had posted false information about Reign pads in the Busy Beaver Pennsylvania edition.  Two days later, Eicher sent an email to Demond Crump, offering Jewel free pages in the Busy Beaver every week until the end of the year (about three months) so that Jewel could print information on Jewel's products and correct any false information that it believed was circulating.  This is in keeping with Hershberger's testimony that the Busy Beaver does not print its own retractions, but offers the complainant an opportunity to print corrective information.  Had Jewel accepted the offer, Jewel would have had over six million pages of free advertising. Jewel pursued this lawsuit instead.

Even after Jewel filed this lawsuit against Busy Beaver, Busy Beaver has continued to allow Jewel's distributors to place ads in the Busy Beaver, just as they did before the lawsuit.

4.    **Lapp's Deposition**

Plaintiff deposed Lapp on April 9, 2024, two weeks after summary judgment briefing closed, and filed the deposition with the court in support of a motion for sanctions discussed below. Lapp confirmed that he was responsible for proofreading and managing the Concerned Sister ad prior to its publication, and recalled that it caught his attention when he first proofread it because it was "questioning somebody else's product," but he did not have time to do "any research," did not have a number for Lantz, and ultimately "left it go" without discussing the ad with anyone. Dkt. 72 at 50:22-51:5. Lapp noted as a general matter that he would call Hershberger about an ad if he thought it was inappropriate, such as campaign or entertainment ads that he felt did not fit the publication's mission, but had done so only eight or ten times over the years.

Lapp stated that while he had initially believed the original submission form had been shredded after publication, he later recalled that he had taken the form back to Lantz's house at some point after Jewel called to complain about the ad's publication.[3] He did not speak to Lantz personally, but left the form with her mother and said the Busy Beaver would not longer accept such ads. Although Lapp talked to Hershberger and Eicher about returning the ad to Lantz's house, he could not recall what he said or when the conversations occurred.

---

[3] Jewel argues in opposition to summary judgment that it is entitled to an adverse inference of actual malice based on Busy Beaver's presumed destruction of Lantz's original submission form. Dkt. 50 at 8-9. Given that the submission form has since been located, I will not address this argument.

## ANALYSIS

1.   **Jewel's Motion for Sanctions, Dkt. 73**

As a threshold matter, Jewel seeks sanctions against Busy Beaver for allegedly failing to timely disclose the existence of the original submission form for the Concerned Sister ad leaving Jewel to expend resources unnecessarily and unable to properly support its opposition to summary judgment.  Jewel previously filed a motion for spoliation in response to Busy Beaver's summary judgment motion based on the assumption that the original form had been shredded. Jewel requested an adverse inference of actual malice as a sanction for Busy Beaver's alleged intentional spoliation of the submission form that would have allowed it to confirm that the ad had been transcribed verbatim.  Dkt. 48 at 1.  This motion prompted Busy Beaver to subpoena Lantz for a deposition, who produced the original form in response, and Jewel withdrew its motion.

After summary judgment briefing was complete, Jewel filed a Rule 56(d) motion asking the court to withhold ruling on Busy Beaver's summary judgment motion for a month so that it could depose Lantz and Lapp.[4]  Jewel argued that it had been unaware that these witnesses were important in this case until the original submission form was rediscovered, and noted some inconsistencies between Busy Beaver's 30(b)(6) deposition testimony and Lapp's declaration. I denied the motion, explaining that these inconsistencies were a red herring and that Jewel's strategic decision not to pursue Lantz's or Lapp's deposition before Jewel's response to Busy

---

[4] Jewel subpoenaed Lantz but she refused to be deposed in light of her Amish belief against involvement in legal matters.  Dkt. 64-7 at 2.  Jewel did not seek to compel her deposition.

Beaver's summary judgment motion was due did not entitle Jewel to a do-over when it had long been aware of these witnesses and their roles in this case.

Jewel now makes a third attempt to divert summary judgment. Specifically, Jewel asks to reopen summary judgment and allow an amended opposition brief, and for the court to impose an adverse inference of actual malice on Busy Beaver's part even though the original submission form was in fact not destroyed. Jewel references Rule 26(e)'s duty to supplement discovery responses and standards governing motions for reconsideration based on newly discovered evidence. But most applicable is Rule 56(d), which allows the court to craft appropriate relief for a nonmovant who "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" to summary judgment.

I will deny this motion as well. Jewel argues that Busy Beaver knew all along that Lantz had the submission form because Lapp's lapse in memory about returning the form to Lantz is not credible and because Busy Beaver knew to subpoena Lantz for the form when faced with a spoliation motion. As I explained in denying Jewel's previous Rule 56(d) motion, Jewel could have subpoenaed or deposed Lantz and Lapp much sooner. Regardless, Busy Beaver sought to *depose* Lantz about the ad form she submitted and requested that she bring any materials she had related to her ad; it did not specifically subpoena production of the form that Jewel says Busy Beaver already knew she had. And Lapp's unchallenged testimony that he was "shocked" when Lantz produced the form in response undermines the argument that he had always known where the form was. His muddled testimony about what he told other people about returning the form to Lantz and when he had these conversation does not bolster Jewel's position either.

At bottom, Jewel says that it would have taken a different approach to litigating this case had it known sooner that the original submission form still existed, but it does not explain what that approach would have been, nor how its opposition to summary judgment would have changed. Indeed, Lantz confirmed that the published ad conformed to her submission in all material respects. Jewel's contention that Busy Beaver replaced a period with a comma makes no difference in determining whether Busy Beaver knew any statements in the ad were false, and Jewel could have asked Lapp about any punctuation changes in support of its motion. I will not reopen summary judgment briefing or allow an adverse inference of actual malice, a remedy for the intentional *destruction* of evidence, based on accusations Jewel does not substantiate. *See e.g.*, *Bracey v. Grondin*, 712 F.3d 1012, 1018 (7th Cir. 2013) (an adverse inference is a remedy for the intentional destruction of evidence).

2.    **Busy Beaver's Motion for Summary Judgment, Dkt. 32**

For Busy Beaver to prevail on its motion for summary judgment, there must be no genuine dispute as to any material fact[5] and Busy Beaver must be entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). If Busy Beaver meets this burden, then Jewel must provide evidence "on which the jury could reasonably find for the nonmoving party" in order to survive summary judgment. *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406-07 (7th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252). At summary judgment, disputed facts are viewed in a light most favorable to Jewel as the non-moving party. However, this is not true for

---

[5] "Material facts" are those that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

9

inferences supported merely by speculation or conjecture. *Coleman v. City of Peoria, Ill.*, 925 F.3d 336, 345 (7th Cir. 2019); *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017).

Jewel is suing Busy Beaver for libel and trade libel based on Busy Beaver's publication of the allegedly defamatory Concerned Sister ad. The relevant legal standards are not in dispute. To succeed on its claims, which I will analyze under the same rubric as the parties do, Jewel must prove: (1) a false statement; (2) communicated by conduct or in speech or writing to someone other than the person defamed; and (3) the communication is unprivileged and tends to harm one's reputation so as to lower him or her in the estimation of the community or to deter third persons from associating or dealing with her. *In re Storms v. Action Wisconsin Inc.*, 2008 WI 56, 309 Wis. 2d 704, 750 N.W. 2d 739, 748. As Jewel admits, it is a limited purpose public figure, so Jewel must also show that the alleged defamatory statements were published with actual malice. *Id.* (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964)).

The parties' dispute centers on actual malice. To defeat summary judgment, Jewel must present facts from which a reasonable jury could find, by clear and convincing evidence, that Busy Beaver published the Concerned Sister ad with actual malice, that is, knowing the statement was false or with reckless disregard for its truth. *Torgerson v. J. Sentinel*, Inc., 210 Wis. 2d 524, 542, 563 N.W.2d 472, 480 (1997). Breaking this definition down further, knowledge of falsity means that the defendant was actually aware that the contested publication was false. *Woods v. Evansville Press Co., Inc.*, 791 F.2d 480, 484 (7th Cir. 1986). "Reckless disregard" means that the defendant "in fact entertained serious doubts" about the trust of the statement or that the defendant published it "with a high degree of awareness of [its] probable falsity." *Id.*, at 484-

10

85 (quoted sources and internal citations omitted); *see also Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989)).

To defeat Jewel's claim of actual malice, Busy Beaver has submitted a declaration from proofreader Lapp, who averred that he had no idea whether the content in the ad was true or not, and that he did not independently verify whether any statements in the publication were true or false. Lapp similarly testified at his deposition that while the ad briefly caught his attention, he did not speak with anyone about it nor do any research before moving on. Jewel says a reasonable jury could infer that Lapp green-lighted the ad in reckless disregard of its falsity based on seven pieces of circumstantial evidence. "The question whether the evidence in the record in a defamation case is sufficient to support a finding of actual malice is a question of law." *Harte-Hanks*, 491 U.S. at 685. Here, Jewel's circumstantial evidence is insufficient even in the aggregate to support a reasonable jury verdict in Jewel's favor under the applicable standards.

First, Jewel argues that actual malice can be inferred from Busy Beaver's publication of an "inherently improbable" and "highly disparaging" ad. Specifically, Jewel takes issue with the statement in the ad that graphene is a conductive metal that attracts electrical waves and radiation from the air. To the extent this statement is "highly disparaging" of Jewel's sanitary napkins, it is not the case that the more serious the charge, the less likely it is to be true. *See Washington Post Co. v. Keogh*, 365 F.2d 965, 970 (D.C. Cir. 1966) (no matter how serious the charge, there must be proof that "the lie was a knowing one" or made "in reckless disregard of the truth"); *see also New York Times v. Sullivan*, 376 U.S. 254, 285 (1964) ("Criticism of their official conduct does not lose its constitutional protection merely because it is effective criticism

and hence diminishes their official reputations"). Jewel still must show that Busy Beaver knew or recklessly disregarded a false statement about Jewel's products.

The record evidence does not establish that Busy Beaver knew the statement was "improbable," or had serious doubts about its veracity. The ad briefly caught Lapp's attention, but he was not so concerned about it to call Eicher or Hershberger, and moved on. Indeed, Lapp proofreads approximately 1,400 ads each week, and many of these ads make claims about health products. Jewel takes issue with the Concerned Sister ad's characterization of graphene as a metal that attracts electrical or radiation waves. But Jewel's retained chemist– retained to assess the veracity of the rumors circulating about its products–described graphene as a quasi-metal that can conduct heat and electricity. Further, Jewel advertises that its product moves heat away from your core and "contains vibrational energy," and it has posted a video to its YouTube account showing how a strip of graphene and one of its sanitary pads containing graphene can light a lightbulb as a source of energy. A reasonable jury could not conclude from this evidence that Concerned Sister's statement in her ad about graphene was so inherently improbable that Busy Beaver acted maliciously in publishing it.

Second, Jewel emphasizes that Busy Beaver published the ad anonymously at Lantz's request. Reliance on an anonymous source for a statement can contribute to a dispute of fact regarding actual malice. For example, in *Hauge v. Fidelity Guaranty Life Insurance Company*, No. 91 C 20033, 1992 WL 229711, at *6 (N.D. Ill. Aug. 27, 1992), a case that did not involve a public figure like Jewel, the court found that an insurance underwriter's reliance on an anonymous neighbor's statement that the plaintiff drank alcohol (as opposed to a medical source

12

as required) contributed to a genuine dispute of fact as to whether defendant acted with reckless disregard in sending this information to the Medical Information Bureau.

Jewel's argument does not raise a jury question on actual malice. Here, Lantz did not submit her ad anonymously–her name and address were on the submission form. While Jewel argues that the Concerned Sister ad was published anonymously in contravention of Busy Beaver policy, Busy Beaver's CFO Hershberger testified that the publication has run ads where the person who submitted the ad is identified on the submission form, but not in the ad itself. Dkt. 43 at 77:13-78:12. Jewel relies on testimony from Eicher in support of its position, who testified that an ad was not supposed to run without a name and phone number or address. Eicher, however, works in a different Busy Beaver office (the Michiana edition), he had no input in publishing the Concerned Sister ad, he was not presented with the more nuanced definition of "anonymous" that Hershberger was, and he also testified that other offices might do things differently as a general matter. Indeed, in the same issue of the Busy Beaver as the Concerned Sister ad, the Busy Beaver also published an ad with only a phone number asking readers to consider their personal care products and "Go toxin free." This evidence does not raise a jury question on actual malice under a clear and convincing standard.

Third, Jewel notes that the Concerned Sister ad allegedly disparaged a company unlike other ads it publishes. Jewel cites no authority for the proposition that actual malice should be inferred because it is a company as opposed to an individual or other entity. Relatedly, Jewel argues that Busy Beaver's publication of the ad was in violation of its policies against printing anonymous ads, against disparaging another company, and against using a company's name without the company's permission. I just discussed Jewel's argument regarding anonymity; as

13

for Jewel's assertions that Lapp violated Busy Beaver policy in publishing that an that allegedly disparaged a company and used a company's name without permission, the extent of Hershberger's testimony is that Busy Beaver does not print women in swimming suits, ads promoting rock concerts, or political ads, categories into which the Concerned Sister ad does not fall. Regardless, even if Lapp did depart from "professional standards," that alone is not enough "for finding actual malice" in cases concerning public figure plaintiffs like Jewel. *Harte-Hanks*, 491 U.S. at 665.

Fourth, Jewel argues that Lapp demonstrated willful blindness by failing to investigate the truth of the ad's statements, and fifth, Jewel relatedly argues the statement that "Graphene is a conductive metal meaning it attracts electrical waves/radiation from the air" could easily have been proven false "with a quick Google search." Dkt. 50 at 20. Jewel believes Lapp should have done more to verify the ad's statements in this case, but "reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing"; there must be enough evidence to support the conclusion that a defendant "in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). Again, it bears remembering that Lapp proofreads approximately 1,400 ads a week and many of these ads make claims about health products that Lapp does not independently verify.

And while Jewel notes that Lapp has a website and social media accounts associated with his equipment rental business, Jewel points to no evidence that Lapp, an Amish man, created or directly controls any of this online content or that he accesses the internet in any beyond-business capacity that could include a general internet search about graphene or Jewel's products

14

without violating his Amish beliefs.[6]  Even if Lapp had done an internet search, the evidence does not bear out that the alleged falsity of the Concerned Sister ad would have been immediately apparent in the search results to an Amish man who sells and processes classified ads.  In point of fact, Jewel produced a screenshot in discovery of an internet search resulting in a description of graphene as "not metallic" but "a quasi-metal since its characteristics of graphene are similar to those of semi-conducting metals."  Dkt. 38-19.

Seventh, and finally, Jewel asserts that Busy Beaver has demonstrated bias against it failing to print a retraction, selectively enforcing its policies to Jewel's detriment, and threatening to cease publication of Jewel distributor ads.  Jewel's argument carries no water.  I have addressed Jewel's policy arguments above, and the lack of evidence of formal policies against disparaging other companies or using a company's name without permission that were enforced across all Busy Beaver offices beyond the Michiana office.  Again, Jewel must show that Busy Beaver published a statement despite knowing it was false or despite harboring serious doubts as to its veracity–that a sales agent did not follow alleged best practices in itself is not enough to find actual malice in this type of defamation case.  *See Harte-Hanks*, 491 U.S. at 665.

Jewel's additional evidence of bias is not enough to create a genuine dispute of material fact on actual malice.  Hershberger explained that Busy Beaver does not print its own retractions, preferring instead to allow the complainant the opportunity to print whatever corrective content the complainant wants in the complainant's own words.  Eicher extended an offer to Jewel of

---

[6] Jewel notes that Eicher, who is also Amish, has watched a YouTube video on his non-Amish sister-in-law's smartphone.  What Eicher or what other Amish and non-Amish employees of Busy Beaver have done online is not probative of Lapp's online conduct or the sincerity of his religious beliefs.

free pages in every issue of the Busy Beaver every week until the end of the year, an offer that could have amounted to millions of pages of free advertising. Jewel decided to pursue this lawsuit instead; it cannot now suggest that Busy Beaver bore it ill will by failing to print a retraction in keeping with its policy or complain that there was no opportunity to respond to the Concerned Sister ad and any rumors about its products that may have been circulating in the Plain communities as a result.

As for the threat to cease publication of ads from Jewel's distributors, Jewel relies on a confidential, inadmissible settlement communication from Busy Beaver that I won't consider. *See* Federal Rule of Evidence 408(a) ("a statement made during compromise negotiations about" a claim are not admissible on behalf of any party). In any event, Busy Beaver has never stopped publishing ads from Jewel's distributors in further contravention of Jewel's allegations of ill will.

In sum, Jewel's circumstantial evidence would not support a reasonable jury finding that Busy Beaver acted with actual malice by clear and convincing evidence, so I must grant summary judgment in Busy Beaver's favor and close this case.


## ORDER

It is ORDERED that:

(1)     Plaintiff's motion for sanctions, dkt. 73, is denied. Each side will bear its own costs on this motion.

(2)     Defendant's motion to withdraw its admission to plaintiff's Request for Admission no. 14, dkt. 80, is granted;

(3)     Defendant's motion for summary judgment, dkt. 32, is granted; and

16

(4)    The clerk's office is directed to enter judgment in favor of defendant and to close this case.

Entered this 28th day of April, 2025.

BY THE COURT:

/s/

_____
STEPHEN L. CROCKER
Magistrate Judge

17